Cornell v. Clarke
Attachments to Petition
For Writ of Habeas Corpus

| | Page |
|---|---|
| 9(f) | 1 |
| 9(g)(6) | 1-3 |
| 11 (a) (5) | 3-4 |
| 11 (b) (5) | 5-8 |
| 11 (c) (5) | 9 |
| 12 Grounds One through Six | 10-28 |

ATTACHMENTS TO HABEAS PETITION

9f | DIRECT APPEAL GROUNDS RAISED

I. THE COURT ERRED IN FINDING THAT PROPER VENUE WAS IN VIRGINIA BEACH.

II. AND III. THE COURT ERRED IN FINDING THE EVIDENCE SUFFICIENT TO SUPPORT HIS CONVICTION FOR SECOND-DEGREE MURDER. THE COMMONWEALTH'S EVIDENCE FAILED TO ESTABLISH MALICE, AND THE CRIMINAL NATURE OF ARMSTRONG'S DEATH.

IV. THE COURT ERRED IN PROHIBITING THE DEFENSE FROM PRESENTING HEARSAY EVIDENCE THAT ANOTHER PERSON MAY HAVE KILLED ARMSTRONG.

V. THE COURT ERRED IN ALLOWING DR. STOKES TO TESTIFY DESPITE A BRADY VIOLATION.

VI. THE COURT ERRED IN FINDING THE EVIDENCE SUFFICIENT TO ESTABLISH THAT APPELLANT WAS GUILTY OF SECOND-DEGREE MURDER.

9(g)(6) | GROUNDS RAISED IN PETITION FOR REVIEW

I. THE COURT OF APPEALS WRONGLY UPHELD THE TRIAL JUDGE, WHO WRONGLY DECIDED THAT THERE WAS A "STRONG

PRESUMPTION" THAT VENUE FOR THIS TRIAL WAS IN VIRGINIA BEACH; ACCORDINGLY, APPELLANT SUBMITS THAT THE VIRGINIA BEACH CIRCUIT COURT LACKED SUBJECT MATTER JURISDICTION TO TRY THIS CASE.

II. THE COURT OF APPEALS WRONGLY UPHELD THE JURY, WHO WRONGLY DECIDED, AND THE TRIAL JUDGE WRONGLY AFFIRMED, THAT THE COMMONWEALTH PRESENTED SUFFICIENT EVIDENCE OF MALICE, AN ESSENTIAL ELEMENT OF SECOND-DEGREE MURDER.

III. THE COURT OF APPEALS WRONGLY UPHELD THE JURY, WHO WRONGLY DECIDED, AND THE TRIAL JUDGE WRONGLY AFFIRMED, THAT THE COMMONWEALTH PRESENTED SUFFICIENT EVIDENCE THAT THE CAUSE OF DEATH OF BRIANNA ARMSTRONG WAS CRIMINAL IN NATURE.

IV. THE COURT OF APPEALS WRONGLY UPHELD THE TRIAL JUDGE, WHO WRONGLY DECIDED THAT THE DEFENSE COULD NOT PRESENT EVIDENCE BY WAY OF HEARSAY EXCEPTION THAT ANOTHER PERSON MAY HAVE KILLED BRIANNA ARMSTRONG.

V. THE COURT OF APPEALS WRONGLY UPHELD THE TRIAL JUDGE, WHO WRONGLY ALLOWED COMMONWEALTH WITNESS DR. STOKES TO TESTIFY OVER DEFENSE COUNSEL'S OBJECTION, DESPITE A BRADY V. MARYLAND VIOLATION BY THE COMMONWEALTH.

VI. The Court of Appeals wrongly upheld the jury, who wrongly decided, and the trial judge wrongly affirmed, that the Commonwealth presented sufficient evidence that Appellant Cornell was guilty beyond a reasonable doubt of second-degree murder.

11(a)(5)   Grounds Raised in Writ of Error
Court of Appeals Ruling based on:

I. Unreasonable Determination of Appellant's statement to detectives.

II. Unreasonable determination on the cause of death.

III. Unreasonable Determination of the collection of plastic pieces not from Armstrong's body.

IV. Unreasonable determination of the mixture of DNA of multiple men found with the body.

V. Unreasonable determination of the green plastic in the car. It did not match the plastic recovered elsewhere.

VI. Unreasonable Determination of the sequence of events in that First, the police searched Appellant's home. Second, days later Appellant rented a Rug Doctor.

VII. Unreasonable determination of criminal agency of another leading to decedent's death.

- 3 -

VIII. UNREASONABLE DETERMINATION OF CUTS AS POST-MORTEM ACTS CANNOT CAUSE DEATH, AND BRUISING TO THE THIGH OR BUTTOCKS CANNOT CAUSE DEATH OR BE DETERMINED AS CRIMINAL IN NATURE.

IX. UNREASONABLE DETERMINATION OF INFERRED MALICE FROM ACTS NOT LEADING TO DEATH.

X. UNREASONABLE DETERMINATION OF THE CAUSE OF DEATH FROM THE ENTIRETY OF EVIDENCE.

XI. UNREASONABLE DETERMINATION OF APPELLANT'S CELL PHONE SEARCH HISTORY.

XII. UNREASONABLE DETERMINATION OF THE EVIDENCE AS IT DOES NOT EXCLUDE ALL REASONABLE HYPOTHESES OF APPELLANT'S INNOCENCE.

XIII. U.S. CONSTITUTION SIXTH AMENDMENT VIOLATION OF A STRUCTURAL NATURE WHEN DEFENDANT WAS DENIED ACCESS TO COUNSEL DURING OVERNIGHT RECESSES.

XIV. U.S. CONSTITUTION SIXTH AMENDMENT VIOLATION WHEN TRIAL COUNSEL FAILED TO SECURE A COURT REPORTER FOR A MOTION IN LIMINE.

XV. U.S. CONSTITUTION FOURTEENTH AMENDMENT VIOLATION OF DUE PROCESS WHEN THE PROSECUTION FAILED TO TIMELY FILE, AND ARTICULATE SPECIFICALLY THE EVIDENCE TO BE EXCLUDED BY THEIR MOTION IN LIMINE.

XVI. U.S. CONSTITUTION SIXTH AMENDMENT VIOLATION WHEN TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE IN FAILING TO INVESTIGATE, PREPARE FOR TRIAL, PRESENT A DEFENSE, AND COMMUNICATE WITH HIS CLIENT.

11(b)(5) | GROUNDS RAISED IN STATE PETITION FOR WRIT OF HABEAS CORPUS:

A. TRIAL JUDGE VIOLATED MR. CORNELL'S SIXTH AMENDMENT RIGHTS TO PRESENT HIS DEFENSE, COMPEL WITNESSES IN HIS FAVOR, CONFRONT THE COMMONWEALTH'S WITNESSES, TESTIFY ON HIS OWN BEHALF, BE PRESENT, AND THE CIVIL RIGHT TO DUE PROCESS IN THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN HE ABUSED HIS JUDICIAL DISCRETION BY:

1. ALLEGEDLY EXCLUDED THIRD-PARTY GUILT EVIDENCE.

2. FAILED TO MAKE A VERBATIM RECORD OF THE MOTION IN LIMINE HEARING.

3. HEARD THE MOTION PAST THE DEADLINE.

4. EXCLUDED MR. CORNELL FROM THE THIRD-PARTY GUILT EVIDENCE SUPPRESSION MOTION HEARING.

B. PROSECUTORIAL MISCONDUCT, IN VIOLATION OF MR. CORNELL'S RIGHTS IN THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, WHEN THE COMMONWEALTH ERRED BY:

1. FAILING TO FOLLOW CLEARLY ESTABLISHED FEDERAL AND LOCAL LAW — TO IDENTIFY THE PARTICULAR EVIDENCE IN THEIR MOTION TO EXCLUDE EVIDENCE OF THIRD-PARTY GUILT.

2. FAILING TO SECURE A VERBATIM RECORD.

3. FILE SEVEN (7) DAYS IN ADVANCE OF TRIAL.

4. MISREPRESENTED THE OUTCOME OF THE THIRD-PARTY GUILT HEARING.

5. MISREPRESENTED EVIDENCE IN THEIR CLOSING ARGUMENT.

Case 3:21-cv-00593-DJN-MRC   Document 1-1   Filed 09/15/21   Page 7 of 29 PageID# 23

THE ADMITTANCE OF KNIVES, PHOTOS, CELL PHONE DATA; AND
TO THE MISTAKEN SPECULATION BY THE JUDGE ON THE
CAUSE OF DEATH.

    6. HE FAILED TO IMPEACH MULTIPLE WITNESSES ON
THIRD-PARTY GUILT EVIDENCE. (MEDICAL EXAMINER, FORENSIC
TECHNICIAN, DNA EXPERT, AND FOUR DETECTIVES.)

    7. HE FAILED TO EXPLORE, OR SEEK THE ASSISTANCE
OF INDEPENDENT EXPERTS IN THE FIELDS OF FORENSIC
PATHOLOGY, DIGITAL FORENSICS, AND DNA ANALYSIS.

## D. AMENDED PETITION CLAIMS IN STATE HABEAS

    1. THE COMMONWEALTH FAILED TO DISCLOSE THE
SEARCH WARRANT OBTAINED FOR CREEK'S RESIDENCES
IN VIOLATION OF BRADY V. MARYLAND.

    2. TRIAL COUNSEL'S ASSISTANCE WAS INEFFECTIVE
FOR FAILING TO DISCOVER, INTRODUCE, AND EXPLAIN TO
THE JURY THE SEARCH WARRANT FOR CREEK'S RESIDENCES.

    3. TRIAL COUNSEL FAILED TO OBJECT TO THE MEDICAL
EXAMINER'S OPINION ON CRIMINAL AGENCY BEING BASED
ON LAY PERSON UNDERSTANDINGS RATHER THAN MEDICAL
KNOWLEDGE.

    4. Trial counsel failed to object to the
Third Party Guilt hearing on the ground that
it was closed to the public.

    5. Trial counsel failed to move for a Daubert
hearing to challenge the reliability of the digital
forensic technician's testimony about cell phone data.

- 7 -

E. Motions Filed with State Habeas Traverse
  1. Motion For Discovery By Leave
  2. Motion For Evidentiary Hearing
  3. Motion For Appointment of Counsel
  4. Motion For Funds For Independent Medical Examiner
  5. Motion For Funds For Independent Expert on
     Ineffective Assistance of Counsel
  6. Motion For Funds For Independent Investigator
  7. Motion For Funds For Independent Expert in
     Digital Forensics (Amended)
  8. Motion to Depose Defense Trial Counsel

Cornell v. Clarke

Attachments to Petition Cont.

11 (c) (5)  SCOVA Petition for Writ of Habeas
Corpus
Grounds raised:

See 11 (b) (5) pp. 5-8

_Attachment to Petition Cont'd_

12. <u>Ground one:</u> The prosecutors presented insufficient evidence of malice.

<u>Supporting Facts</u>

In the evening of Thursday, May 7, 2015, Brianna Armstrong ("Mrs. Armstrong") had dinner with Justin Cornell ("Mr. Cornell") in his Virginia Beach apartment. Mr. Witchey, a neighbor, witnessed Mrs. Armstrong leave the apartment alone, alive, and unpursued between 11:00 and 11:30 p.m. The prosecutors stipulated that she left when they proposed that Mrs. Armstrong returned later that night. The prosecutors presented no evidence to support the conjecture that she returned. Transcript Page 1037, TP 1037.

On Sunday, May 31, 2015 (24 days later) her body was found on Douglas Road in Chesapeake, VA. Entomology Examination. The prosecutors presented no evidence to prove Mr. Cornell transported her body to Douglas Road ("the crime scene"). Forensics searched Mr. Cornell's only means of transportation, and recovered no blood or DNA matched to Mrs. Armstrong. His car had not been recently cleaned. TP 731-2. Some trash in the car was similar to some trash on Douglas Road, which was similar to some items in his home. None of Mr. Cornell's fingerprints were at the crime scene. TP 758. A mixture profile of, at least two men's DNA, was collected from the inside of a pair of boxer briefs. One sample was too small for comparison. Another sample could have been Mr. Cornell's, or 1,102 other men in Virginia, and 40,424 other men in the United States. The DNA testing was not the standard, but an experimental Y-specific test. TP 829.

<u>Attachment to Petition (cont'd)</u>

Forensics (C.P.D.) collected the boxer briefs, and a bag of Mr. Cornell's bathroom trash on Douglas Road. Investigators questioned Mr. Cornell because the trash bag had a receipt with Mr. Cornell's name and address on it, as well as Q-Tips, ginseng supplement bottles, and other toiletry trash. The receipt was dated November, 2014, seven (7) months earlier. TP 333.

Mr. Cornell spoke to detectives in his home on multiple occasions. He always cooperated fully, welcomed them inside, and never restricted their access to any area of the apartment. His statements were always consistent. Mr. Cornell corrected himself without prompting after he initially misstated the day of the week Mrs. Armstrong visited. It was her habit to visit on Wednesdays, but that week they switched to Thursday to accomodate Mr. Cornell's work schedule. Trial Exhibit #132 ("Tr. Ex. 132")(Calendar).

Mr. Witchey witnessed Mr. Cornell, and Mrs. Armstrong that Thursday night. They had a pleasant dinner together. They never argued, nor fought. Mr. Witchey saw Mrs. Armstrong leave. His testimony was uncontraverted. TP 1037.

Mrs. Nazario, a long-time friend of Mr. Cornell's, and a witness to many of their interactions, described Mrs. Armstrong and Mr. Cornell's relationship as "friendly" and "positive." They never fought or argued. Mr. Cornell had no history of violence. Her testimony was uncontraverted. TP's 996, 1000.

Mr. Nazario also testified to the positive nature of Mr. Cornell and Mrs. Armstrong's friendship. They had a fling from December, 2014 to February, 2015, then returned to a platonic friendship. Mr. Cornell went on to date other women. Mrs. Armstrong, and Mr. Cornell never fought, or argued. Mr. Nazario's testimony was uncontraverted. TP's 1011-1012, and ~~above~~ 151-152.

## Amendment to Petition Cont'd

### Ground One cont'd:

Mrs. Armstrong was married to Corey Lee Creek. Mr. Creek is a convicted violent sex offender. Early on in the investigation, he hired Andrew Scott, Esq. TP 161.

The judge and jury never heard the following statements made to the detectives by Mr. Creek, and Mrs. Armstrong's mutual friends:

1) Mr. Creek abused Mrs. Armstrong.
2) Mrs. Armstrong wanted a divorce.
3) Mr. Creek was "angry at Mrs. Armstrong over many things."
4) Mr. Creek got rid of Mrs. Armstrong's cats days after she went missing, yet weeks before her body was found.
5) Mr. Creek lost his job around Thanksgiving, and had been out of work for six months.
6) The night Mrs. Armstrong left Mr. Cornell's apartment, Mr. Creek stopped driving his pickup truck, and "suddenly" started driving a sedan.
7) The sedan had handicapped plates. Mr. Creek is not handicapped.

Police reports of Detectives: Branch, Brenner, Hatchell, II, and Thomas.

Mr. Creek admitted he lied to police on the missing persons report. He falsely claimed that he had not argued, or fought with his wife. On the stand Mr. Creek admitted that Mrs. Armstrong and he talked of divorce, argued, and fought. TP 186.

After one such fight in October, 2014, Mrs. Armstrong sought out Mr. Cornell for help. Mr. Cornell urged her to call the police. Mrs. Armstrong chose not to involve the authorities. Mr. Cornell understood

Attachment to Petition  Cont'd

Ground One Cont'd :

that Mrs. Armstrong was afraid of Mr. Creek's retaliation. Only
then did Mr. Cornell agree to show some self-defense techniques
specific to Mr. Creek's abuse. Mr. Cornell purchased training gear
for Mrs. Armstrong. Financial records for Mr. Cornell, Prosecutor's
File, never obtained by the defense, nor shown to the judge or jury.
"Bri need this," was the last text message Mr. Cornell received
from Mrs. Armstrong. At 11:30 p.m., Thursday, May 7, 2015.
She had left Mr. Cornell's apartment 15 minutes earlier.
The "this" she was refering to was a picture of two guns.
Detective Hatchell, II Police Report.

_Cornell v. Clarke_

_Attachment to Petition Cont._

_Ground Two: The prosecutors presented insufficient evidence_
_of corpus delicti._

<u>Supporting Facts</u>

The prosecutors presented no evidence that Mr. Cornell engaged in any unlawful behavior capable of causing Mrs. Armstrong's death. The prosecutor's own medical examiner, Dr. Stokes, ruled her death "unknown," because suicide, and accident could not be ruled out. TP 641-650.

The prosecutors presented no evidence that her death was the result of a "Killing." Dr. Stokes ruled out gun shot wound, sharp force trauma, blunt force trauma, strangulation, and poison. Ibid. The toxicology report showed no drugs in her system including those prescribed for her clinical depression, and anxiety. At some unknown time after her death, her body was dismembered, and left on the side of Douglas Road in black trash bags. Tr. Ex. 15, at 1:06, video time. All cuts were made after death. The bruising on her thigh and buttocks was not lethal. Autopsy. The prosecutors presented no evidence to establish how many days before her death the bruising happened.

The prosecutors presented evidence that supports the theory of death by suicide. Both of her forearms were never recovered. Her mother had recently died, and that Sunday was Mother's Day. Mrs. Armstrong was depressed, unmedicated, and in an abusive marriage. Autopsy.

Mr. Creek was the sole beneficiary to her life insurance policy. The policy had a suicide clause. Mr. Creek could not collect in the event her death was ruled a suicide. Nor if he were implicated in her death. TP 208-9.

The prosecutors presented no forensic psychiatrist to testify to the nature of the dismemberment.

- 14 -

Cornell v. Clarke

Attachment to Petition cont.

Ground Two cont. :

The prosecutors presented Mr. Cornell's sharp tools including office supplies, collectibles, and knives. They had neither Mrs. Armstrong's blood, or DNA on them. They were not connected to a single cut. They had not been cleaned recently. TP 1053.

Mr. Cornell's apartment contained construction tools. Mr. Cornell owned a hand saw, a hack saw, a circular saw, and a reciprocating saw. The forensic anthropologist proved that none of these tools were used in the dismemberment. TP 685.

The prosecutors presented only some of the trash bags used to dispose of her body. At least two types were used. One had red drawstrings at the top. The other, clearly visible in video exhibit #15 at 1:06, had no drawstrings. The prosecutors only presented the ones with drawstrings. The others did not match any bags in Mr. Cornell's possession. TP 1096.

Mr. Cornell gave Detective Thomas his only box of trash bags so that the detective could count the number remaining to see if the number of bags missing matched the number of bags used to dispose of her body. The numbers did not match. Detective Thomas Report.

The prosecutors presented a Blu-ray Disc ("BD") with Mr. Cornell's cell phone records ("records") including browser history. The forensic entomologist, R.D. Hasty, said the body was disposed no later than Wednesday afternoon. (5-28-2015) The body was discovered at 10 am, Sunday, 5-31-2015. The police told Mr. Cornell that evening. The BD listed a search for Douglas Road on Sunday morning, but AT&T admitted an error in their recorded date. Mr. and Mrs. Nazario confirmed that Mr. Cornell searched for Douglas Road Monday Morning. Tr. Ex.#132, Entomologist Report, Mr. and Mrs. Nazario Affidavits.

- 15 -

_Attachment to Petition Cont._

Ground Two cont. :

The prosecutors encrypted the BD before turning it over. They never disclosed a copy that could be opened for verification, or that the defense could show the jury the cell location history did not include Douglas Road, nor the contacts, text messages, photos, videos, notes, or calendar to aid in his defense. See Ground Four, below.

The prosecutors presented no evidence to link Mr. Cornell to a tool of dismemberment. No amount of blood consistent with a dismemberment was found. No means of transporting her body was linked to Mr. Cornell. The prosecutors presented no evidence that Mr. Cornell had the means to commit this crime.

Dr. Stokes established within a reasonable degree of medical certainty :

1) No cause of death;
2) No mechanism of death;
3) No manner of death;
4) No time of death;
5) No date of death; and
6) No place of death.

TP 987.

The prosecutors presented no evidence of a motive. Mr. Cornell had no motive. Mr. Creek had both personal, and financial motives. See Ground Three, below.

*Cornell v. Clarke*

## Attachment to Petition Cont.

Ground Three: The prosecutors presented insufficient evidence to establish Mr. Cornell was guilty of second degree murder.

### Supporting Facts

The prosecutors presented no evidence to contradict the eyewitness testimony of Mr. Witchey; Mrs. Armstrong left Mr. Cornell's home alone, alive, and unpursued between 11:00 and 11:30 p.m. on May 7. Mr. Cornell did not have the opportunity to commit this crime.

The prosecutors presented no evidence linking Mr. Cornell to Mrs. Armstrong's car. Forensics did not find Mr. Cornell's DNA, or fingerprints in her car, nor her DNA, or fingerprints in his car.

Mr. Cornell was new to Virginia, and did not drive for the first six months. The prosecutors presented no evidence that Mr. Cornell had ever been to, or heard of the Great Dismal Swamp, or Douglas Road.

Police reports point specifically to Mr. Creek as an alternative perpetrator, whom the prosecutors presented no evidence to exclude. Mr. Creek had the requisite malice, means, and opportunity.

Mr. Creek, through her death, avoided a costly divorce, and collected life insurance money. Mr. Creek "suddenly" stopped driving his pickup truck on May 7. He testified that he last saw his wife on May 7, but waited until May 9, to report her missing. Detective Brenner, Interoffice Memorandum, 6-10-2015, and TP 166.

On May 8, Mr. Creek, and J. Spivey met up in a parking lot to sell comic books. Mr. Creek's behavior was so odd, never mentioning his wife's disappearance, that Mr. Spivey took it upon himself to contact the police. Mr. Creek testified that his parents left on Vacation on May 8. The police never searched their house. Detective Thomas Report p. 10. TP 166.

## Attachment to Petition Cont.

Ground Three cont. :

Unknown to Mr. Cornell, Mrs. Armstrong's friends T. Tabor, S. Colver, D. Foley, R. Harris, C. Whetzel-Dixon, and K. Varner all claimed that Mr. Creek was abusive, Mrs. Armstrong wanted a divorce, there was infidelity on both sides, and/or he was "very angry" with her. Detective Reports, Brenner, Hatchell, II, and Thomas.

The prosecutors presented evidence that Mr. Cornell, and Mrs. Armstrong dated around Christmastime, 2014. Mr. Creek had malice toward both of them. TP 151-2.

The prosecutors presented no evidence to exclude the reasonable hypothesis of Mr. Cornell's innocence supported by the evidence of Mr. Creek's guilt contained in the record.

The prosecutors presented circumstantial evidence in the form of garbage found on Douglas Road. The garbage was from Christmastime. The receipt with Mr. Cornell's name was from November, 2014. The trash bag, and carpet molding had green plastic faux Christmas tree needles similar to the tree Mr. Cornell put up after Thanksgiving.

Mr. Cornell is of average intelligence, and a college graduate. It is unlikely that such a person would dispose of a dead body, and his personal trash in the same spot. The prosecutors presented no evidence to prove Mr. Cornell, rather than the owner of the second DNA sample, disposed of the trash. The mixture of mens DNA was collected, from the inside of a pair of underwear, by a female technician. Two female technicians sequenced the DNA.

Attachment to Petition cont.

Ground Three cont.:

The prosecution presented blue latex gloves collected from the crime scene. Mr. Cornell's fingerprints were neither on the outside nor on the inside of the gloves. The gloves were the same color as the gloves used in the courtroom, by the forensics team, and similar to gloves in Mr. Cornell's home. No DNA was matched to Mr. Cornell.

The prosecution presented a list of web searches, allegedly from Mr. Cornell's phone, to the jury. The phone records they gave to the defense were encrypted. The validity of the search history was never established. See Ground Five, below.

AT&T admitted to at least one error affecting the date. The list made it appear as if the location of Douglas Road was known before witness saw Mr. Cornell search for it in the early morning of Monday, June 1, 2015. AT&T Report, A. Nazario, and K. Nazario Affidavits.

On Thursday, May 14, a full week after Mrs. Armstrong left the ground floor apartment, the police search it, and report nothing out of the ordinary. On May 16, Mr. Cornell rented a rug cleaner. His lease was ending May 31. The lease required the carpet to be cleaned before Mr. Cornell vacated. The prosecution presented a "quarter-sized" spot of Mrs. Armstrong's blood adjacent to the molding linking the hallway carpet to the bathroom linoleum. The amount was inconsistent with "dismemberment." No evidence established how old the stain was. TP 986.

Attachment to Petition Cont.

. Ground Four: Mr. Cornell received ineffective assistance of counsel at trial.

Supporting Facts

Vaughan Jones, Esq. represented Mr. Cornell during the guilt phase of the trial. Mr. Cornell replaced Mr. Jones with Diallo Morris for the penalty phase.

Vaughan Jones was hired, over the phone, on June 9, 2015.

Mr. Cornell was held without bail at arraignment. He could not look up Mr. Jones' disciplinary record from the city jail, ("VBCJ").

Had Mr. Cornell known of Mr. Jones' disciplinary record, he would not have hired Mr. Jones.

As of June 30, 2014, Mr. Jones disciplinary record included:

1) One 60-day suspension
2) Three public reprimands
3) One private reprimand
4) One public admonition
5) One private admonition

Mr. Jones' trial strategy was that the prosecutors failed to meet their burden of proof. He neglected to, or was denied the opportunity, to pursue an alternative perpetrator defense. See Ground Five, below.

Mr. Jones did not investigate the theory that Mrs. Armstrong committed suicide, and Mr. Creek obscured the cause of death for the insurance money.

Based upon the lay evidence of location, Dr. Stokes opined the cause of death to be "unspecified criminal violence." TP 650 Mr. Jones did not object to the opinion on criminal agency.

<u>Attachment to Petition Cont.</u>

<u>Ground Four cont. :</u>

Dr. Stokes ruled out as cause of death: gun shot wound, blunt force trauma, sharp force trauma, strangulation, drowning, and poison. Dr. Stokes gave **no** medical reason he suggested "criminal violence." TP 650

Mr. Jones failed to present a defense on causation.

On May 19, 2016, four days before trial, the prosecutor moved to exclude all evidence of an alternative perpetrator. A written motion was also filed. Motion to Regulate Alleged Evidence of Third-Party Guilt. See Ground Five, below.

Judge O'Brien heard this motion in chambers, excluding the public, and the defendant. TP 1020. See Ground Six, below.

Mr. Jones failed to get an objection to the motion, and the hearing on the record.

Mr. Jones failed to have the hearing recorded verbatim.

The written motion failed to identify any particular evidence, or the grounds upon which such evidence was inadmissible. See Ground Four, below.

Mr. Jones failed to get an objection on the record for either the late filing, or the lack of specificity.

The hearing covered more than scheduling. They discussed the cross-examination of Mr. Creek, as well as which witnesses Mr. Cornell may call in his favor.

Mr. Jones failed to have Mr. Cornell present at this critical phase.

Mr. Jones failed to make this critical phase open to the public.

Forensic technician K. Mileski copied the contents of Mr. Cornell's phone to a Blu-ray Disc ("BD"). K. Mileski then encrypted the BD, and gave it to the prosecutors. TP 931. Tr. Ex. #132.

_Attachment to Petition cont_

_Ground Four cont._ :

The prosecutors gave a BD to Mr. Jones. Upon receipt of the BD, Mr. Jones failed to ask the prosecutor for an unencrypted copy, notify the court, or take any action to familiarize himself with the State's evidence.

The BD contained material, exculpatory evidence in the "GPS cell location," "SMS messages," "Contacts," "photos, and videos." See Ground Five, below.

Mr. Jones failed to authenticate the BD, question K. Mileski on the possibility of being tampered with, move for a Daubert hearing, or a _Brady_ violation.

Mr., and Mrs. Nazario could and would have testified that they were with Mr. Cornell when he looked up Douglas Road on his phone in the early morning of Monday, June 1, 2015. Mr. Jones failed to ask them about the web search either in his pretrial interview, or on the stand at trial. Affidavits, Mr., and Mrs. Nazario. July, 2019.

Mr. Jones failed to file motions in limine to challenge the lack of evidence of: malice (Ground One); and corpus delicti (Ground Two); or to exclude the sharp tools as prejudicial, and immaterial.

Judge O'Brien told Mr. Jones that his motions to challenge malice, and corpus delicti should have been handled "in limine", rather than as the prosecutors rested. TP 1047.

Judge O'Brien went on to state, and the prosecutor agreed, that "no one" was going to connect the sharp tools to a single cut. TP 1053

_Brandy v. Clarke_

<u>Attachment to Petition cont.</u>

<u>Ground Four cont. :</u>

Mr. Jones failed to object to the prosecutor's misstatement that "all" the trash bags on Douglas Road were of the same style as the ones owned by Mr. Cornell.

Trial exhibit #15, video of Douglas Road, shows that the bags used were different from Mr. Cornell's. At 1:06, roadside bags.

Mr. Jones failed to familiarize himself with the video, and he failed to crossexamine the detectives, and forensic technicians who collected the evidence.

The prosecutors, having viewed the video, Knowingly made false statements to the jury, See Ground Five, below.

Mr. Jones failed to introduce exculpatory evidence.

Mr. Jones did not call any of the seven witnesses who pointed to Mr. Creek as the perpetrator, nor did he ever interview them.

Mr. Jones tried to call one witness to testify that he believed Mrs. Armstrong's life was in danger, and that belief caused him to take a road trip to check on her wellbeing. The exact details of what he would have testified to are unknown, because, noting the Third-Party Guilt motion, the judge refused to allow his testimony. The road trip was before Mrs. Armstrong had met Mr. Cornell, but while she was married to Mr. Creek, TP 1020.

Mr. Jones failed to investigate, introduce, and question the detectives on the search warrant for Mr. Creek's residences.

On June 9, 2015, the police executed a search on two of the three houses to which Mr. Creek had access.

Attachment to Petition cont.

_Ground Four cont. :_

Mr. Jones did not tell the jury that the detectives had probable cause to believe Mr. Creek killed Mrs. Armstrong.

The detectives would have testified that Mr. Creek had the means, motive, and opportunity to kill Mrs. Armstrong, and frame Mr. Cornell. Mr. Creek lied about the state of their marriage. After only three years of marriage, they, slept in separate bedrooms. They talked of divorce, argued, and fought.

Mr. Jones failed to investigate, and introduce phone records for Mr. Creek, and Mrs. Armstrong.

Mr. Creek's phone records would have confirmed the extent of Mr. Creek's arguments, and fights with Mrs. Armstrong.

Mrs. Armstrong's phone records would have shown that she accessed her Facebook account on Sunday, May 10, three days after she left Mr. Cornell's home. Inter-Office Memo, Detective Brenner.

Mr. Jones failed to investigate, and introduce Mr. Cornell's financials.

Mr. Cornell purchased a training uniform for Mrs. Armstrong. The gi was in her size. This supports Mr. Cornell's statement that he was teaching her self-defense techniques because of Mr. Creek's abuse.

Mr. Cornell made several purchases in California while Mrs. Armstrong texted photos from inside Mr. Cornell's home. This explains that Mrs. Armstrong had a key to his apartment, and if she had access, this explains how Mr. Creek gained access to Mr. Cornell's clothing, and home.

Mr. Jones' errors are viewed cumulatively.

- 24 -

Cornell v. Clarke

Attachment to Petition Cont.

Ground Five: The prosecutors violated Mr. Cornell's rights to a meaningful opportunity to present a complete defense, to confront and compel witnesses, and to due process.

Supporting Facts

The prosecutors filed their motion to exclude all evidence of an alternative perpetrator on May 19, 2016, four days before trial was set to begin, and after the deadline for such motions had expired. Motion To Regulate Alleged Evidence of Third-Party Guilt, ("the motion").

The motion was heard in Judge O'Brien's chambers ("the hearing"). The prosecutors failed to record the hearing verbatim.

The prosecutors failed to specify any particular evidence, or the grounds upon which it was inadmissible.

The prosecutors sought to exclude all evidence in which there was "speculation about... motive," in another person, Motion, p. 5.

Mr. Creek physically abused his wife, Mrs. Armstrong. He had actual malice, and multiple motives. Detectives Reports. See Ground One, above.

The prosecutors failed to specify any ground upon which the detective's reports, or the witnesses' testimony would have been inadmissible.

The prosecutor confirmed with Judge O'Brien that they discussed this motion "in chambers" prior to the start of trial. TP 1020.

Chief Judge O'Brien, "okay." Ibid.

*Cornell v. Clarke*

<u>Attachment to Petition Cont.</u>

---

<u>Ground Five cont. :</u>

The prosecutors withheld Mr. Cornell's cell phone records through encryption.

Forensic technician K. Mileski copied the extracted data onto Blu-ray Discs (BDs). K. Mileski encrypted the BDs.

Mr. Jones could not open the BD he received from the prosecutors.

The Virginia Beach Circuit Court cannot open the BD. Tr. Ex. #132.

Without access to the cell phone, or the BD, the defense could not authenticate the data.

To this day, Mr. Cornell has never had access to the BD. He has personal knowledge that the phone has files of: "Contacts;" "text messages;" "Calendar;" "Photos;" "Videos;" "Web History;" "Cell Location;" and "Cell log."

Without his "Contacts" Mr. Cornell could not give Mr. Jones a list of friends, coworkers, clients, and witnesses, to interview to testify on his behalf.

Without his "text messages" Mr. Cornell could not prove his positive relationship with Mrs. Armstrong, could not prove Mrs. Armstrong had her own key to his apartment. See Ground four, above.

Without his "Calendar" Mr. Cornell could not prove he routinely saw Mrs. Armstrong on Wednesdays, or that he worked ten-hour days on Friday, Saturday, and Sunday after Mrs. Armstrong left his home.

Without his "Photos," and "Videos" he could not prove that the large stain in the hallway was due to a burst pipe in the ceiling.

Without his "web history," "cell location," and "Call log" he could not prove he never went to the crime scene.

- 26 -

<u>Attachment to Petition Cont.</u>

<u>Ground Five cont.!</u>

The prosecutors knowingly misrepresented evidence to the jury during their closing argument.

The prosecutors, through their agents, created a video of Douglas Road, and the adjacent swamp. Tr. Ex. #15.

At 1:06 on the video the picture shows the body in plain black trash bags. The tops of the bags are clear. There are no drawstrings, or red ties. The bags are on the side of the road, not in the swamp. Other bags are seen, but not what they contain.

The plain black trash bags containing the body parts were not entered into evidence.

The prosecutor said "all" the body parts were "in the swamp" in "black trash bags with red ties... The same brand of the trash bags that were found in [Mr. Cornell's] apartment." TP 1096.

Mr. Cornell did not own, and was not connected to the brand of plain black trash bags.

Since no witness, or physical evidence linked Mr. Cornell to any behavior likely to cause death, or great bodily harm to anyone, the prosecutors relied on circumstantial evidence to link Mr. Cornell to the trash found on Douglas Road.

Attachment to Petition cont.

   Ground Six: Chief Judge O'Brien violated Mr. Cornell's right to
due process when he abused his judicial discretion.

                    Supporting Facts

   On May 19, 2016, Chief Judge O'Brien[1] heard the prosecutor's
motion to exclude all evidence of an alternative perpetrator
in his chambers, TP 1020.

   Chief Judge O'Brien excluded the public.

   Chief Judge O'Brien excluded the defendant.

   Chief Judge O'Brien, the prosecutors, and Mr. Jones discussed
the crossexamination of Mr. Creek, and Mr. Jones' intent to
call witnesses to testify to Mr. Creek's actual malice, his
means, motive, and opportunity to commit this crime.

   Chief Judge O'Brien did not record the hearing verbatim.

   Chief Judge O'Brien made no record of his findings of fact,
nor his conclusions of law.

[1] Chief Judge O'Brien has since retired.

- 28 -

## Certificate of Service

I, Justin Cornell, certify that a true copy of this Petition for Writ of Habeas Corpus was sent via U.S.P.S., on this 31 of August, 2021, to:

Office of the Attorney General
c/o Kelsey M. Bulger, A.A.G.
202 North Ninth Street
Richmond, VA 23219

Justin Cornell

Notary:

In the County of Brunswick, VA.

Subscribed and sworn to before me this 31 of August, 2021.

Notary Public

My commission expires: _____