# Cornell v. Clarke
## Attachments to Petition
### For Writ of Habeas Corpus

| | Page |
|---|---|
| 9(f) | 1 |
| 9(g)(6) | 1-3 |
| 11(a)(5) | 3-4 |
| 11(b)(5) | 5-8 |
| 11(c)(5) | 9 |
| 12 Grounds One through Six | 10-28 |

Attachments to Habeas Petition

| | |
|---|---|
| 9f | **Direct Appeal Grounds Raised** |

I. The Court erred in finding that proper venue was in Virginia Beach.

II. and III. The Court erred in finding the evidence sufficient to support his conviction for second-degree murder. The Commonwealth's evidence failed to establish malice, and the criminal nature of Armstrong's death.

IV. The Court erred in prohibiting the defense from presenting hearsay evidence that another person may have killed Armstrong.

V. The Court erred in allowing Dr. Stokes to testify despite a *Brady* violation.

VI. The Court erred in finding the evidence sufficient to establish that appellant was guilty of second-degree murder.

| | |
|---|---|
| 9(g)(6) | **Grounds Raised in Petition for Review** |

I. The Court of Appeals wrongly upheld the trial judge, who wrongly decided that there was a "strong

-1-

presumption" that venue for this trial was in Virginia Beach; accordingly, Appellant submits that the Virginia Beach Circuit Court lacked subject matter jurisdiction to try this case.

II. The Court of Appeals wrongly upheld the jury, who wrongly decided, and the trial judge wrongly affirmed, that the Commonwealth presented sufficient evidence of malice, an essential element of second-degree murder.

III. The Court of Appeals wrongly upheld the jury, who wrongly decided, and the trial judge wrongly affirmed, that the Commonwealth presented sufficient evidence that the cause of death of Brianna Armstrong was criminal in nature.

IV. The Court of Appeals wrongly upheld the trial judge, who wrongly decided that the defense could not present evidence by way of hearsay exception that another person may have killed Brianna Armstrong.

V. The Court of Appeals wrongly upheld the trial judge, who wrongly allowed Commonwealth witness Dr. Stokes to testify over defense counsel's objection, despite a Brady v. Maryland violation by the Commonwealth.

-2-

VI. The Court of Appeals wrongly upheld the jury, who wrongly decided, and the trial judge wrongly affirmed, that the Commonwealth presented sufficient evidence that Appellant Cornell was guilty beyond a reasonable doubt of second-degree murder.

11(a)(5) Grounds Raised in Writ of Error
Court of Appeals Ruling Based on:

I. Unreasonable determination of Appellant's statement to detectives.

II. Unreasonable determination on the cause of death.

III. Unreasonable determination of the collection of plastic pieces not from Armstrong's body.

IV. Unreasonable determination of the mixture of DNA of multiple men found with the body.

V. Unreasonable determination of the green plastic in the car. It did not match the plastic recovered elsewhere.

VI. Unreasonable determination of the sequence of events in that first, the police searched Appellant's home. Second, days later Appellant rented a Rug Doctor.

VII. Unreasonable determination of criminal agency of another leading to decedent's death.

-3-

VIII. UNREASONABLE DETERMINATION OF CUTS AS POST-MORTEM ACTS CANNOT CAUSE DEATH, AND BRUISING TO THE THIGH OR BUTTOCKS CANNOT CAUSE DEATH OR BE DETERMINED AS CRIMINAL IN NATURE.

IX. UNREASONABLE DETERMINATION OF INFERRED MALICE FROM ACTS NOT LEADING TO DEATH.

X. UNREASONABLE DETERMINATION OF THE CAUSE OF DEATH FROM THE ENTIRETY OF EVIDENCE.

XI. UNREASONABLE DETERMINATION OF APPELLANT'S CELL PHONE SEARCH HISTORY.

XII. UNREASONABLE DETERMINATION OF THE EVIDENCE AS IT DOES NOT EXCLUDE ALL REASONABLE HYPOTHESES OF APPELLANT'S INNOCENCE.

XIII. U.S. CONSTITUTION SIXTH AMENDMENT VIOLATION OF A STRUCTURAL NATURE WHEN DEFENDANT WAS DENIED ACCESS TO COUNSEL DURING OVERNIGHT RECESSES.

XIV. U.S. CONSTITUTION SIXTH AMENDMENT VIOLATION WHEN TRIAL COUNSEL FAILED TO SECURE A COURT REPORTER FOR A MOTION IN LIMINE.

XV. U.S. CONSTITUTION FOURTEENTH AMENDMENT VIOLATION OF DUE PROCESS WHEN THE PROSECUTION FAILED TO TIMELY FILE, AND ARTICULATE SPECIFICALLY THE EVIDENCE TO BE EXCLUDED BY THEIR MOTION IN LIMINE.

XVI. U.S. CONSTITUTION SIXTH AMENDMENT VIOLATION WHEN TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE BY FAILING TO INVESTIGATE, PREPARE FOR TRIAL, PRESENT A DEFENSE, AND COMMUNICATE WITH HIS CLIENT.

11(b)(5) Grounds raised in state petition for writ of habeas corpus:

A. Trial Judge violated Mr. Cornell's Sixth Amendment rights to present his defense, compel witnesses in his favor, confront the Commonwealth's witnesses, testify on his own behalf, be present, and the civil right to due process in the Fourteenth Amendment to the United States Constitution when he abused his judicial discretion by:

1. Allegedly excluded Third-Party Guilt evidence.
2. Failed to make a verbatim record of the motion in limine hearing.
3. Heard the motion past the deadline.
4. Excluded Mr. Cornell from the Third-Party Guilt evidence suppression motion hearing.

B. Prosecutorial misconduct, in violation of Mr. Cornell's rights in the Sixth and Fourteenth Amendments to the United States Constitution, when the Commonwealth erred by:

1. Failing to follow clearly established federal and local law — to identify the particular evidence in their motion to exclude evidence of Third-Party Guilt.
2. Failing to secure a verbatim record.
3. File seven (7) days in advance of trial.
4. Misrepresented the outcome of the Third-Party Guilt hearing.
5. Misrepresented evidence in their closing argument.

-5-

6. Withheld Brady material by digital encryption.

C. Defense trial counsel erred by violating Mr. Cornell's Sixth Amendment right to effective assistance of counsel. His deficient performance and prejudicial errors include:

1. He allowed the Judge and Commonwealth to hold the Third-Party Guilt Hearing without being recorded, without identifying any evidence to be excluded, or getting his objection recorded.

2. He failed to adequately investigate before making strategic decisions.

3. He failed to explore, and introduce exculpatory evidence including: Mr. Cornell's financial records, GPS data from Armstrong's phone, GPS data from Mr. Cornell's phone showing he was never on Douglas Road, Creek's phone records showing he was having an affair, and acting like he knew his wife was deceased weeks before her body was found.

4. He failed to file multiple motions in limine including: to transfer Mr. Cornell to the Third-Party Guilt Hearing; to challenge venue, corpus delicti, and malice; and to exclude prejudicial, non-probative evidence including irrelevant knives, and gruesome photos.

5. He failed to object to, or get an objection on the record for: the Commonwealth's misrepresentation in closing arguments about erroneous trash bag evidence;

- 5 -

THE ADMITTANCE OF KNIVES, PHOTOS, CELL PHONE DATA, AND TO THE MISTAKEN SPECULATION BY THE JUDGE ON THE CAUSE OF DEATH.

6. HE FAILED TO IMPEACH MULTIPLE WITNESSES ON THIRD-PARTY GUILT EVIDENCE. (MEDICAL EXAMINER, FORENSIC TECHNICIAN, DNA EXPERT, AND FOUR DETECTIVES.)

7. HE FAILED TO EXPLORE, OR SEEK THE ASSISTANCE OF INDEPENDENT EXPERTS IN THE FIELDS OF FORENSIC PATHOLOGY, DIGITAL FORENSICS, AND DNA ANALYSIS.

D. AMENDED PETITION CLAIMS IN STATE HABEAS

1. THE COMMONWEALTH FAILED TO DISCLOSE THE SEARCH WARRANT OBTAINED FOR CREEK'S RESIDENCES IN VIOLATION OF BRADY V. MARYLAND.

2. TRIAL COUNSEL'S ASSISTANCE WAS INEFFECTIVE FOR FAILING TO DISCOVER, INTRODUCE, AND EXPLAIN TO THE JURY THE SEARCH WARRANT FOR CREEK'S RESIDENCES.

3. TRIAL COUNSEL FAILED TO OBJECT TO THE MEDICAL EXAMINER'S OPINION ON CRIMINAL AGENCY BEING BASED ON LAY PERSON UNDERSTANDINGS RATHER THAN MEDICAL KNOWLEDGE.

4. Trial counsel failed to object to the Third Party Guilt hearing on the ground that it was closed to the public.

5. Trial counsel failed to move for a Daubert hearing to challenge the reliability of the digital forensic technician's testimony about cell phone data.

- 7 -

E. Motions Filed with State Habeas Traverse
   1. Motion For Discovery By Leave
   2. Motion For Evidentiary Hearing
   3. Motion For Appointment of Counsel
   4. Motion For Funds For Independent Medical Examiner
   5. Motion For Funds For Independent Expert on Ineffective Assistance of Counsel
   6. Motion For Funds For Independent Investigator
   7. Motion For Funds For Independent Expert in Digital Forensics (Amended)
   8. Motion to Depose Defense Trial Counsel

<u>Cornell v. Clarke</u>
<u>Attachments to Petition Cont.</u>

11 (c)(5)  SCOVA Petition for Writ of Habeas Corpus
Grounds raised:

See 11(b)(5) pp. 5-8

-9-

Cornell v. Clark

Attachment to Petition Cont'd

12. Ground one: The prosecutors presented insufficient evidence of malice.

Supporting Facts

In the evening of Thursday, May 7, 2015, Brianna Armstrong ("Mrs. Armstrong") had dinner with Justin Cornell ("Mr. Cornell") in his Virginia Beach apartment. Mr. Witchey, a neighbor, witnessed Mrs. Armstrong leave the apartment alone, alive, and unpursued between 11:00 and 11:30 p.m. The prosecutors stipulated that she left when they proposed that Mrs. Armstrong returned later that night. The prosecutors presented no evidence to support the conjecture that she returned. Transcript Page 1037, TP 1037.

On Sunday, May 31, 2015 (24 days later) her body was found on Douglas Road in Chesapeake, VA. Entomology Examination. The prosecutors presented no evidence to prove Mr. Cornell transported her body to Douglas Road ("the crime scene"). Forensics searched Mr. Cornell's only means of transportation, and recovered no blood or DNA matched to Mrs. Armstrong. His car had not been recently cleaned. TP 731-2. Some trash in the car was similar to some trash on Douglas Road, which was similar to some items in his home. None of Mr. Cornell's fingerprints were at the crime scene. TP 758. A mixture profile of, at least two men's DNA, was collected from the inside of a pair of boxer briefs. One sample was too small for comparison. Another sample could have been Mr. Cornell's, or 1,102 other men in Virginia, and 40,424 other men in the United States. The DNA testing was not the standard, but an experimental Y-specific test. TP 829.

-10-

## Attachment to Petition (cont'd)

Forensics (C.P.D.) collected the boxer briefs, and a bag of Mr. Cornell's bathroom trash on Douglas Road. Investigators questioned Mr. Cornell because the trash bag had a receipt with Mr. Cornell's name and address on it, as well as Q-Tips, ginseng supplement bottles, and other toiletry trash. The receipt was dated November, 2014, seven (7) months earlier. TP 333.

Mr. Cornell spoke to detectives in his home on multiple occasions. He always cooperated fully, welcomed them inside, and never restricted their access to any area of the apartment. His statements were always consistent. Mr. Cornell corrected himself without prompting after he initially misstated the day of the week Mrs. Armstrong visited. It was her habit to visit on Wednesdays, but that week they switched to Thursday to accommodate Mr. Cornell's work schedule. Trial Exhibit #132 ("Tr. Ex. 132")/Calendar.

Mr. Witchey witnessed Mr. Cornell and Mrs. Armstrong that Thursday night. They had a pleasant dinner together. They never argued, nor fought. Mr. Witchey saw Mrs. Armstrong leave. His testimony was uncontraverted. TP 1037.

Mrs. Nazario, a long-time friend of Mr. Cornell's, and a witness to many of their interactions, described Mrs. Armstrong and Mr. Cornell's relationship as "friendly" and "positive." They never fought or argued. Mr. Cornell had no history of violence. Her testimony was uncontraverted. TP's 996, 1000.

Mr. Nazario also testified to the positive nature of Mr. Cornell and Mrs. Armstrong's friendship. They had a fling from December, 2014 to February, 2015, then returned to a platonic friendship. Mr. Cornell went on to date other women. Mrs. Armstrong and Mr. Cornell never fought, or argued. Mr. Nazario's testimony was uncontraverted. TP's 1011-1012, and 151-152.

— 11 —

Cornell v. Clarke
Amendment to Petition Cont'd

Ground One cont'd:

Mrs. Armstrong was married to Corey Lee Creek. Mr. Creek is a convicted violent sex offender. Early on in the investigation, he hired Andrew Scott, Esq. TP 161.

The judge and jury never heard the following statements made to the detectives by Mr. Creek, and Mrs. Armstrong's mutual friends:
1) Mr. Creek abused Mrs. Armstrong.
2) Mrs. Armstrong wanted a divorce.
3) Mr. Creek was "angry at Mrs. Armstrong over many things."
4) Mr. Creek got rid of Mrs. Armstrong's cats days after she went missing, yet weeks before her body was found.
5) Mr. Creek lost his job around Thanksgiving, and had been out of work for six months.
6) The night Mrs. Armstrong left Mr. Cornell's apartment, Mr. Creek stopped driving his pickup truck, and "suddenly" started driving a sedan.
7) The sedan had handicapped plates. Mr. Creek is not handicapped.

Police reports of Detectives: Branch, Brenner, Hatchell, II, and Thomas.

Mr. Creek admitted he lied to police on the missing persons report. He falsely claimed that he had not argued, or fought with his wife. On the stand Mr. Creek admitted that Mrs. Armstrong and he talked of divorce, argued, and fought. TP 186.

After one such fight in October, 2014, Mrs. Armstrong sought out Mr. Cornell for help. Mr. Cornell urged her to call the police. Mrs. Armstrong chose not to involve the authorities. Mr. Cornell understood

— 12 —

Cornell Clark
Attachment to Petition Cont'd

Ground One Cont'd:

that Mrs. Armstrong was afraid of Mr. Creek's retaliation. Only then did Mr. Cornell agree to show some self-defense techniques specific to Mr. Creek's abuse. Mr. Cornell purchased training gear for Mrs. Armstrong. Financial records for Mr. Cornell, Prosecutor's File, never obtained by the defense, nor shown to the judge or jury. "Bri need this," was the last text message Mr. Cornell received from Mrs. Armstrong. At 11:30 p.m., Thursday, May 7, 2015. She had left Mr. Cornell's apartment 15 minutes earlier. The "this" she was refering to was a picture of two guns. Detective Hatchell, II Police Report.

Cornell v. Clarke
Attachment to Petition Cont.

Ground Two: The prosecutors presented insufficient evidence of corpus delicti.

Supporting Facts

The prosecutors presented no evidence that Mr. Cornell engaged in any unlawful behavior capable of causing Mrs. Armstrong's death. The prosecutor's own medical examiner, Dr. Stokes, ruled her death "unknown," because suicide, and accident could not be ruled out. TP 641-650.

The prosecutors presented no evidence that her death was the result of a "killing." Dr. Stokes ruled out gun shot wound, sharp force trauma, blunt force trauma, strangulation, and poison. Ibid. The toxicology report showed no drugs in her system including those prescribed for her clinical depression, and anxiety. At some unknown time after her death, her body was dismembered, and left on the side of Douglas Road in black trash bags. Tr. Ex. 15, at 1:06, video time. All cuts were made after death. The bruising on her thigh and buttocks was not lethal. Autopsy. The prosecutors presented no evidence to establish how many days before her death the bruising happened.

The prosecutors presented evidence that supports the theory of death by suicide. Both of her forearms were never recovered. Her mother had recently died, and that Sunday was Mother's Day. Mrs. Armstrong was depressed, unmedicated, and in an abusive marriage. Autopsy.

Mr. Creek was the sole beneficiary to her life insurance policy. The policy had a suicide clause. Mr. Creek could not collect in the event her death was ruled a suicide. Nor if he were implicated in her death. TP 208-9.

The prosecutors presented no forensic psychiatrist to testify to the nature of the dismemberment.

- 14 -

Ground Two cont.:

The prosecutors presented Mr. Cornell's sharp tools including office supplies, collectables, and knives. They had neither Mrs. Armstrong's blood, or DNA on them. They were not connected to a single cut. They had not been cleaned recently. TP 1053.

Mr. Cornell's apartment contained construction tools. Mr. Cornell owned a hand saw, a hack saw, a circular saw, and a reciprocating saw. The forensic anthropologist proved that none of these tools were used in the dismemberment. TP 685.

The prosecutors presented only some of the trash bags used to dispose of her body. At least two types were used. One had red drawstrings at the top. The other, clearly visible in video exhibit #15 at 1:06, had no drawstrings. The prosecutors only presented the ones with drawstrings. The others did not match any bags in Mr. Cornell's possession. TP 1096.

Mr. Cornell gave Detective Thomas his only box of trash bags so that the detective could count the number remaining to see if the number of bags missing matched the number of bags used to dispose of her body. The numbers did not match. Detective Thomas Report.

The prosecutors presented a Blu-ray Disc ("BD") with Mr. Cornell's cell phone records ("records") including browser history. The forensic entomologist, R.D. Hasty, said the body was disposed no later than Wednesday afternoon. (5-28-2015) The body was discovered at 10 am. Sunday, 5-31-2015. The police told Mr. Cornell that evening. The BD listed a search for Douglas Road on Sunday morning, but AT&T admitted an error in their recorded date. Mr. and Mrs. Nazario confirmed that Mr. Cornell searched for Douglas Road Monday Morning. Tr. Ex. #132, Entomologist Report, Mr. and Mrs. Nazario Affidavits.

Ground Two cont.:

The prosecutors encrypted the BD before turning it over. They never disclosed a copy that could be opened for verification, or that the defense could show the jury the cell location history did not include Douglas Road, nor the contacts, text messages, photos, videos, notes, or calendar to aid in his defense. See Ground Four, below.

The prosecutors presented no evidence to link Mr. Cornell to a tool of dismemberment. No amount of blood consistent with a dismemberment was found. No means of transporting her body was linked to Mr. Cornell. The prosecutors presented no evidence that Mr. Cornell had the means to commit this crime.

Dr. Stokes established within a reasonable degree of medical certainty:
1) No cause of death;
2) No mechanism of death;
3) No manner of death;
4) No time of death;
5) No date of death; and
6) No place of death.

TP 987.

The prosecutors presented no evidence of a motive. Mr. Cornell had no motive. Mr. Creek had both personal, and financial motives. See Ground Three, below.

-16-

<u>Cornell v. Clarke</u>
<u>Attachment to Petition Cont.</u>

Ground Three: The prosecutors presented insufficient evidence to establish Mr. Cornell was guilty of second degree murder.

Supporting Facts

The prosecutors presented no evidence to contradict the eyewitness testimony of Mr. Witchey; Mrs. Armstrong left Mr. Cornell's home alone, alive, and unpursued between 11:00 and 11:30 p.m. on May 7. Mr. Cornell did not have the opportunity to commit this crime.

The prosecutors presented no evidence linking Mr. Cornell to Mrs. Armstrong's car. Forensics did not find Mr. Cornell's DNA, or fingerprints in her car, nor her DNA, or fingerprints in his car.

Mr. Cornell was new to Virginia, and did not drive for the first six months. The prosecutors presented no evidence that Mr. Cornell had ever been to, or heard of the Great Dismal Swamp, or Douglas Road.

Police reports point specifically to Mr. Creek as an alternative perpetrator, whom the prosecutors presented no evidence to exclude. Mr. Creek had the requisite malice, means, and opportunity.

Mr. Creek, through her death, avoided a costly divorce, and collected life insurance money. Mr. Creek "suddenly" stopped driving his pickup truck on May 7. He testified that he last saw his wife on May 7, but waited until May 9, to report her missing. Detective Brenner, Interoffice Memorandum, 6-10-2015, and TP 166.

On May 8, Mr. Creek, and J. Spivey met up in a parking lot to sell comic books. Mr. Creek's behavior was so odd, never mentioning his wife's disappearance, that Mr. Spivey took it upon himself to contact the police. Mr. Creek testified that his parents left on vacation on May 8. The police never searched their house. Detective Thomas Report p. 10. TP 166.

-17-

Ground Three cont.:

Unknown to Mr. Cornell, Mrs. Armstrong's friends T. Tabor, S. Colver, D. Foley, R. Harris, C. Whetzel-Dixon, and K. Varner all claimed that Mr. Creek was abusive, Mrs. Armstrong wanted a divorce, there was infidelity on both sides, and/or he was "very angry" with her. Detective Reports, Brenner, Hatchell, II, and Thomas.

The prosecutors presented evidence that Mr. Cornell, and Mrs. Armstrong dated around Christmastime, 2014. Mr. Creek had malice toward both of them. TP 151-2.

The prosecutors presented no evidence to exclude the reasonable hypothesis of Mr. Cornell's innocence supported by the evidence of Mr. Creek's guilt contained in the record.

The prosecutors presented circumstantial evidence in the form of garbage found on Douglas Road. The garbage was from Christmastime. The receipt with Mr. Cornell's name was from November, 2014. The trash bag, and carpet molding had green plastic faux Christmas tree needles similar to the tree Mr. Cornell put up after Thanksgiving.

Mr. Cornell is of average intelligence, and a college graduate. It is unlikely that such a person would dispose of a dead body, and his personal trash in the same spot. The prosecutors presented no evidence to prove Mr. Cornell, rather than the owner of the second DNA sample, disposed of the trash. The mixture of mens DNA was collected, from the inside of a pair of underwear, by a female technician. Two female technicians sequenced the DNA.

- 18 -

Attachment to Petition cont.

Ground Three cont.:

The prosecution presented blue latex gloves collected from the crime scene. Mr. Cornell's fingerprints were neither on the outside nor on the inside of the gloves. The gloves were the same color as the gloves used in the courtroom, by the forensics team, and similar to gloves in Mr. Cornell's home. No DNA was matched to Mr. Cornell.

The prosecution presented a list of web searches, allegedly from Mr. Cornell's phone, to the jury. The phone records they gave to the defense were encrypted. The validity of the search history was never established. See Ground Five, below.

AT&T admitted to at least one error affecting the date. The list made it appear as if the location of Douglas Road was known before witness saw Mr. Cornell search for it in the early morning of Monday, June 1, 2015. AT&T Report, A. Nazario, and K. Nazario Affidavits.

On Thursday, May 14, a full week after Mrs. Armstrong left the groundfloor apartment, the police search it, and report nothing out of the ordinary. On May 16, Mr. Cornell rented a rug cleaner. His lease was ending May 31. The lease required the carpet to be cleaned before Mr. Cornell vacated. The prosecution presented a "quarter-sized" spot of Mrs. Armstrong's blood adjacent to the molding linking the hallway carpet to the bathroom linoleum. The amount was inconsistent with "dismemberment." No evidence established how old the stain was. TP 986.

- 19 -